STATE OF MICHIGAN
IN THE UNITED STATES DISTRICT COURT

LATHFIELD PARTNERS, LLC

        Plaintiff,

v.

CITY OF LATHRUP VILLAGE;
LATHRUP VILLAGE DOWNTOWN
DEVELOPMENT AUTHORITY;
JIM WRIGHT;
MCKENNA & ASSOCIATES, INC.;

        Defendants.

File No: 21-10198-PDB
Hon. Paul D. Borman

| | |
|---|---|
| Law Offices of Aaron D. Cox, PLLC | Garan Lucow Miller, PC |
| Aaron D. Cox (P69346) | John J. Gillooly (P41948) |
| Brian C. Gurta (P80756) | Kathleen M. Griffith (P79921) |
| Elizabeth E. Ellison (P82098) | Attorneys for Lathrup Village |
| Attorneys for Plaintiff | 1155 Brewery Park Blvd., Suite 200 |
| 23820 Eureka Rd. | Detroit, MI 48207 |
| Taylor, MI 48180 | 313-446-5501 |
| 734-287-3664 | jgillooly@garanlucow.com |
| aaron@aaroncoxlaw.com | kgriffith@garanlucow.com |

## **PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, Lathfield Partners, LLC, by and through its counsel, Aaron D. Cox, Esq., and states as its First Amended Complaint as follows:

## Jurisdictional Statements

1. Plaintiff Lathfield Partners, LLC ("Lathfield") is a Michigan Limited Liability company whose registered office is located in Oakland County, Michigan.

2. Lathfield is the owner of real property located in the City of Lathrup Village, County of Oakland, and State of Michigan commonly known as 28600-28690 Southfield Rd., Lathrup Village, MI (the "Property").

3. Defendant Lathrup Village ("Lathrup" or the "City") is a Michigan Municipal Corporation in Oakland County, MI.

4. Defendant Jim Wright ("Wright") is an agent or employee of Defendant McKenna Associates, Inc, a Michigan Corporation ("McKenna").

5. Defendant Wright is an adult individual who conducts business in Oakland County.

6. Defendant McKenna conducts business in Oakland County and is employed by Lathrup as an independent contractor.

7. Defendant Lathrup Village Downtown Development Authority ("DDA") is a public body corporate formed under Act 57 of 2018.

8. The amount in controversy exceeds $25,000.00 exclusive of costs, interest, and attorney's fees.

9. This complaint seeks declaratory relief pursuant to MCR 2.605.

10. There is an actual controversy within the Oakland County Circuit Court's jurisdiction necessitating a declaration of legal rights between the parties.

11. The acts and events that give rise to this cause of action took place in the County of Oakland, State of Michigan.

12. Jurisdiction is proper in the Oakland County Circuit Court for the State of Michigan pursuant to MCL 600.601, MCL 600.605, and MCR 2.605 (A)(2).

13. Venue is proper in the Oakland County Circuit Court for the State of Michigan pursuant to MCL 600.1621.

### Common Allegations

14. This Complaint addresses the unfettered abuse of the City and its officials in the administration of its zoning codes and ordinances, and its arbitrary, capricious, and disparate treatment of Plaintiff.

15. The acts set forth herein constitute the voluntary and official policies or practices of the City of Lathrup Village and its Downtown Development Authority.

16. The Property was approved for construction by the City of Lathrup Village on or about April 17, 1961.

17. The Property was presumptively issued a certificate of occupancy by Lathrup upon completion of construction.

18. Lathfield purchased the Property on or about January 28, 2020 from Dhal Real Estate, LLC.

19. The Property has at all relevant times been located in Lathrup's Commercial Vehicle Zoning District (the "CV District").

20. The CV District encompasses a multitude of commercial uses including office space, retail, personal services, business services, restaurants, etc.

21. For at least the last decade Lathrup has licensed uses at the Property permitted under the CV District zoning designation, including but not limited to: office, auto wholesalers, barber shops, salons, nail studios, and retailers.

22. Pursuant to Article 6 of Lathrup's zoning code, site plan review applies only to proposed development plans or where there is a proposed change of use.

23. The use of the Property has not changed at any time relevant to this cause of action.

24. Lathfield has no intention to change the use of the Property.

25. Upon Lathfield's acquisition of the Property, and notwithstanding the lack of change of use, Lathrup made material representations to Lathfield that the Property required site plan approval from Lathrup.

26. Lathrup demanded that an inspection of the Property be permitted under the threat of government punishment for the site-plan review.

27. Lathfield, unaware of Lathrup's zoning code at the time and fearful of Lathrup's threats of government action, was compelled against its will to permit an inspection of the Property.

28. On or about July 24th and July 31st, 2020 Lathrup and Jim Wright conducted numerous inspections of the Property under the threat of punishment for the failure to comply.

29. Shortly thereafter, an inspection report (the "Inspection") was issued to Lathfield purporting to claim that Lathfield must conduct certain repairs to the Property.

30. The Inspection relies upon the 2014, 2015, and 2017 versions of various building and trade codes.

31. The only codes adopted by the City have been made under Michigan's Home Rule City Act and MCL 117.3 (K).

32. MCL 117.3 (K) identifies the express process that cities shall comply with in order to enforce codes by reference:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or

other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

33. The codes adopted by Lathrup under MCL 117.3 (K) are limited to the 2006 versions of the various building, electrical, mechanical, plumbing, and maintenance codes. See Chapter 14, Articles II, III, IV, V, and VI. [1]

34. Based on the improper Inspection, Jim Wright, in his individual capacity has been informing Lathfield's licensees and prospective licensees that the Property is being condemned.

35. Based on the improper Inspection, Jim Wright, in his individual capacity has been telling Lathfield's contractors and other tradesman that they should not seek permits to perform work on the Property because it was being condemned.

36. As of the date of this Complaint, Lathrup has taken no action to condemn the Property.

---

[1] LI attempted to appeal the conclusions of the Inspection but was told by Lathrup that the Inspection was not appealable because no violations had been issued.

37. On or about September 10, 2020 Lathrup issued a Site Plan Review (the "Report") to Lathfield wherein Lathrup states that the building "was likely approved as an office building" and "that a mixture of uses occupy the building."

38. The Report further identifies that Lathfield intends to "maintain the mixture of uses operating in the building," and that "no additional space is proposed to be added."

39. The City's own Report identifies and confirms the long standing, pre-existing use of the Property that has been repeatedly approved by the City.

40. There has been no change of use at the Property as defined by Lathrup's zoning code.

41. Absent a change of use, there is no mechanism in which the City of Lathrup can compel Lathfield to undergo and comply with Lathrup's Report.

42. Having realized that they have no enforcement mechanism under its zoning code, Lathrup proceeded to threaten Lathfield with prosecution for not having obtained a business license from Lathrup.

43. Lathrup's codes and ordinances require a license for any individual or entity "conducting business" in the City.

44. The City's own code in section 18-26 defines what "conducting business" means within the parameters of Lathrup's busines licensing scheme.

45. The ownership and leasing of commercial real property is not identified as "conducting business" in the City's own ordinances.

46. Notwithstanding the City's lack of lawful authority to compel Lathfield to seek and obtain a business license, Lathfield did in fact submit an application in compliance with Section 18-30 of the City's codes and ordinances, which was then refused by the City.

47. Notwithstanding, Lathrup has threatened to withhold the business license applications of Lathfield's commercial licensees under the false threat that Lathfield has failed to obtain a required business license.

48. Lathrup has further threatened to punish Lathfield by issuing citations to it for not obtaining a business license.

49. Lathrup's threat to withhold other parties' business license applications for any reason related to its dispute with Lathfield is likewise contrary to Lathrup's own code in Section 18-30, which sets forth the requirements for obtaining a business license. Section 18-30 does not require that the property owner have first obtained a license of any kind in order for Lathrup to issue a business license to an appropriate applicant.

50. Lathrup has further threatened to punish Lathfield for refusing to disclose confidential business information of its licensees.

51. Lathrup does have an ordinance that compels commercial landlords to disclose a "list of all tenants in such building and the principal business of each tenant."

52. Lathfield does not have tenants at its buildings.

53. Lathfield's licensees are, by law, not tenants, and Lathfield's relationships with its licensees are governed by the contractual relationship between those parties.

## COUNT I – ACTION FOR DECLARATORY RELIEF
### As to the City of Lathrup Village
### Declare that the Property is not subject to site plan approval

54. Plaintiff incorporates by reference the allegations set forth above and relies on them as though fully restated here.

55. The Property has a current certificate of occupancy.

56. The City's zoning code only requires a site-plan review and approval process in order to obtain a certificate of occupancy or if there is a change of use.

57. The City's zoning code defines a change of use as: A "change in use" occurs whenever a described use within any district alters its activities in such fashion as to fall within any other use described in this ordinance which is separately or differently treated or dealt with so that different or other regulations apply.

58. There has been no change of use at the Property in decades.

59. The City's own Report acknowledges that there is no change in use at the Property.

60. Notwithstanding the status quo at the Property for decades, the City is seeking to compel Lathfield to undergo site plan review and approval in violation of its own zoning code.

61. Lathfield is entitled to a declaration that the City cannot compel site plan review and approval of the Property under its applicable zoning code.

62. Absent such declaratory relief Lathfield will suffer irreparable injury where the City has threatened to condemn the Property.

**COUNT II – ACTION FOR DECLARATORY RELIEF**
**As to the City of Lathrup Village**
**Declare that LI has no obligation to obtain a business license**

63. Plaintiff incorporates by reference the allegations set forth above and relies on them as though fully restated here.

64. The City has threatened Lathfield with the closure of its Property, issuance of tickets, and other governmental action against it if Lathfield did not obtain a business license from the City before January 6, 2021.

65. The City's business licensing ordinance is found in Chapter 18, Article II of the City's codes and ordinances.

66. The City's business licensing ordinance makes it mandatory for every person "conducting business" in Lathrup to apply for and obtain a business license.

67. The term "conducting business" is a defined term in the City's business licensing ordinance:

*Conducting business* means that a person is:

   (1)  Pursuing a business, which is any form of activity that has for its end the production or supplying of commodities. The term "manufacturing business" means any form of process of making, working, fabricating or producing wares.

   (2)  Acting as a merchant, which means any person who engages in or conducts a business selling goods, wares and merchandise and who, for the purpose of carrying on such business, uses, lists or occupies, either in whole or in part, a room, building, structure or vacant property for the exhibition of such wares and merchandise.

   (3)  Performing a trade, which means all other kinds of vocations, occupations, enterprises, establishments and kinds of activity not included in the definition of the term "merchant" or "business."

   (4)  Is a transient merchant, which means any person who engages in or conducts a business buying or selling goods, wares and merchandise and does not have a mercantile establishment in the city. Auctioneers shall not be deemed to be transient merchants. The term "transient merchant" is synonymous with the term "peddler."

   (5)  A person is also conducting business when engaged in commercial business activities which are regulated under the handbill regulations of article II of chapter 6.

68. Lathfield does not produce or supply commodities.

69. Lathfield is not a merchant selling goods, wares, or merchandise.

70. Lathfield is not engaged in a trade.

71. Lathfield is not a transient merchant.

72. Lathfield is not engaged in an activity regulated by the handbill regulations of the City.

73. The City's business licensing ordinance definition of "conducting business" does not include the mere ownership of commercial property in the City.

74. No other ordinance in the City regulates or governs commercial licensing of real property space.

75. Lathfield is entitled to a declaration that the City has no lawful means to compel Lathfield to obtain a busines license or to punish Lathfield for not obtaining a business license.

76. Absent such declaratory relief Lathfield will suffer irreparable injury where the City has threatened to condemn the Property and refuse to issue further business licenses to Lathfield's licensees.

## COUNT III – DUE PROCESS VIOLATIONS UNDER MICHIGAN'S CONSTITUTION
### As to the City of Lathrup Village

77. Plaintiff incorporates by reference the allegations set forth above and relies on them as though fully restated here.

78. Article I §17 of the Michigan Constitution prevents the City from depriving a person of their property without due process of law, including the rights to adequate notice and a meaningful opportunity to be heard.

79. Michigan's due-process clause likewise prohibits arbitrary, capricious, and unreasonable actions of government.

80. Lathfield has a protected property right under Michigan's Constitution in the Property, its ability to license space in that Property, and its ability to earn income through licensing such space.

81. Due Process protections afforded under Michigan's Constitution requires that a government provide appropriate notice of ordinances it intends to enforce.

82. As more fully set forth above, the City has purported to enforce a number of codes regulating skilled trades, using versions from 2014 forward.

83. The City's adopting ordinance under MCL 117.3 (K) only purports to adopt the 2006 version of the Michigan versions of these trade codes.

84. An improperly adopted code is unenforceable as a matter of law. See *Ewing v. City of Detroit*, 237 Mich App 696 (2000).

85. The City failed to properly adopt trade codes from 2014 forward and cannot lawfully use those codes for enforcement purposes.

86. The City's improper enforcement of these codes deprives Lathfield of adequate notice in violation of its Due Process Rights.

87. Similarly, while the City sent the Inspection to Lathfield, it refused to honor Lathfield's rights of appeal of the findings of such Inspection.

88. The City adopted a board of appeals to hear challenges arising from inspections performed under the various codes.

89. The City served the Inspection on Lathfield and proceeded to threaten Lathfield with condemnation and various other enforcement actions.

90. Lathfield timely filed an appeal of the Inspection and its applicability to the Property.

91. Notwithstanding, the City refused to honor the appeal request.

92. The City's refusal to honor the appeal request further constitutes a due process violation under Michigan's Constitution.

93. Taken as a whole, the City's conduct as set forth herein constitutes an arbitrary and capricious attempt to intimidate, threaten, bully, and coerce Lathfield to do something to the Property that the City cannot legally require. The City's continued refusal to permit any type of administrative challenge so as to further their coercion of Lathfield deprives Lathfield of necessary due process.

94. The City's conduct with respect to infringing on the contractual rights of Lathfield and its licensees is a further violation of Lathfield's substantive, economic due process rights.

95. The City's due process violations are in furtherance of a concerted effort with the other Defendants to coerce and intimidate Lathfield to perform upgrades and improvements to the Property that the City cannot otherwise lawfully compel.

96. The City's conduct is arbitrary, capricious, and abuse of governmental authority.

97. Lathfield has been harmed in an amount exceeding $25,000.00 exclusive of costs, interest, and attorney's fees due to the City's due process violations.

98. Lathfield's business reputation and esteem in the community has been harmed by the City's due process violations.

## COUNT IV – ACTION FOR DECLARATORY RELIEF
### As to the City of Lathrup Village
**Declare that Lathrup Village cannot prejudice the rights of third parties**

99. Plaintiff incorporates by reference the allegations set forth above and relies on them as though fully restated here.

100. The City has threatened Lathfield that it will not issue business licenses to its licensees when requested because of the allegation that Lathfield is required to have a business license and does not.

101. The City, through Wright and the DDA, have repeatedly and intentionally dissuaded potential business licensees from seeking licensure at the Property using the false claim that the Property is being condemned.

102. The City's business licensing code does not condition the issuance of a business license on the action or inaction of a third party.

103. The City's business licensing code expressly mandates to the applicant that the applicant must comply with the City's codes and ordinances. See §18-30 (d).

104.    The City's threat to withhold business licenses of Lathfield's

licensees is improper.

105.    The City has made various statements to Lathfield's licensees of this

false narrative, to the detriment of Lathfield's business practices.

106.    Lathfield is entitled to a declaration that the City cannot withhold its

licensees' business licenses for the action or inaction of a third party.

107.    Absent such declaratory relief Lathfield will suffer irreparable injury

where the City has threatened to condemn the Property.

108.    Lathfield is further suffering monetary harm in excess of $25,000.00

where the City is intentionally prohibiting licensees from doing business at

the Property.

## COUNT V – BUSINESS DEFAMATION
### As to Jim Wright and McKenna

109.    Plaintiff incorporates by reference the allegations set forth above and

relies on them as though fully restated here.

110.    Jim Wright, outside of the exercise of any duties or functions he may

have on behalf of the City, repeatedly told contractors that the Property was

being condemned.

111.    Jim Wright, outside of the exercise of any duties or functions he may

have on behalf of the City, repeatedly told existing and prospective business

licensees that the Property was being condemned.

112.     At no time prior to the filing of this Complaint has Lathrup taken any

action to condemn the Property.

113.     At no time prior to the filing of this Complaint has Lathrup taken any

enforcement action of any kind against Lathfield and the Property.

114.     Jim Wright knew, or should have known, that the Property was not

condemned when he made his statements to contractors and business

licensees.

115.     Jim Wright knew, or should have known, that the Property was not in

the process of being condemned when he made his statements to contractors

and business licensees.

116.     Jim Wright knew, or should have known, that there has been no

enforcement action from the City against Lathfield or the Property.

117.     Jim Wright's statements to Lathfield's contractors and business

licensees were false when made.

118.     Jim Wright's false statements that the Property was condemned or

being condemned defamed and disparaged Lathfield.

119.     Jim Wright, negligently or with actual malice, made the false

statements regarding Lathfield's Property to Lathfield's contractors and

business licensees.

120.     Jim Wright's false and defamatory statements have a tendency to, and

did, prejudice Lathfield in the conduct of its business and deterred others

from dealing with Lathfield.

121.     At all times relevant to this Complaint Jim Wright was an employee

of McKenna.

122.     At all times relevant to this Complaint Jim Wright was acting within

the scope of his employment for McKenna as an inspector and building

official contracted to perform services for Lathrup.

123.     McKenna is liable for the acts and omissions of its employees under

the theory of respondeat superior.

124.     McKenna is likewise liable to Plaintiff for negligently training Jim

Wright in the performance of his duties.

125.     As a direct a proximate result of Wright and McKenna's wrongful,

Lathfield has suffered economic injury, loss of goodwill, harm to its

business reputation, loss of esteem and standing in the community, and loss

of business opportunities.

## COUNT VI – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### As to Jim Wright and McKenna

126.     Plaintiff incorporates by reference the allegations set forth above and

relies on them as though fully restated here.

127.     Lathfield is in the business of licensing the use of space in the
Property to Licensees.

128.     At periodic and repeated times throughout 2020, Jim Wright made
false statements to Lathfield's contractors and business licensees about the
Property being condemned.

129.     At all times relevant to this Complaint, Jim Wright knew or should
have known that Lathfield was the owner of the Property.

130.     At all times relevant to this Complaint, Jim Wright knew or should
have known that contractors seeking permits to work on the Property were
doing business with Lathfield.

131.     At all times relevant to this Complaint, Jim Wright knew or should
have known that business licensees seeking business applications were
doing business with Lathfield.

132.     Jim Wright knew or should have known of Lathfield's business
relationships with these contractors and business licensees as they were
expressly seeking approvals required for the working on and business affairs
at the Property.

133.     Lathfield's contractors and business licensees had a reasonable
likelihood of future economic benefit to Lathfield.

134.     By his conduct as set forth above, Jim Wright either intentionally or negligently interfered with the contracts and business relationships and expectancies between Lathfield, its business partners, and its licensees.

135.     Jim Wright's false statements about the Property being condemned were intended to, and did, interfere with Lathfield's contracts and business relationships, causing their breach, disruption, termination, or preventing them from concluding.

136.     McKenna is liable for the acts and omissions of its employees under the theory of respondeat superior.

137.     McKenna is likewise liable to Plaintiff for negligently training Jim Wright in the performance of his duties.

138.     As a direct a proximate result of Wright and McKenna's wrongful, Lathfield has suffered economic injury, loss of goodwill, harm to its business reputation, loss of esteem and standing in the community, and loss of business opportunities.

### COUNT VII – VIOLATION OF THE MICHIGAN CONSTITUTION CONTRACTS CLAUSES
**As to Lathrup Village**

139.     Plaintiff incorporates by reference the allegations set forth above and relies on them as though fully restated here.

140.    The Michigan Constitution of 1963, Article 1 §10 prohibits the enforcement of laws that impair the private contractual rights of citizens.

141.    Lathfield has contracts with its licensees.

142.    Lathfield's contracts with its licensees contain confidentiality and non-disclosure provisions, which expressly prohibits the disclosure of the names and occupations of the businesses that Lathfield contracts with.

143.    Lathrup has demanded that Lathfield disclose such information pursuant to its ordinances.

144.    If Lathfield disclosed the information requested to Lathrup Village it would be in violation of its contracts with its licensees and would be subjected to resulting liability.

145.    Lathrup's ordinance is not rationally related to its police power where it requires information a property owner that it could also ascertain directly from the licensee where each licensee is required under Lathrup's ordinances to apply for and obtain an appropriate business license before conducting business in the City.

146.    Lathrup's ordinance compelling Lathfield to produce a list of its contracting licensees substantially impairs Lathfield's contracts.

147.    Alternatively, the ordinance relied upon by Lathrup to compel Lathfield to disclose the list of licensees Lathfield contracts with does not

apply on its face where the ordinance only compels the disclosure of "tenants."

148.     Where Lathfield has no tenants as defined by Michigan law, Lathfield is under no obligation to disclose any information to the City and is entitled to declaratory relief to that effect.

149.     Further, Lathfield's contracts with its licensees expressly places the burden of obtaining any necessary licenses, certificates, or other governmental approvals on the licensee.

150.     There is no prohibition under the City's ordinances or Michigan law that restricts the shifting of this burden on Lathfield's licensee.

151.     Notwithstanding, the City purports to use its ordinances in an attempt to impair the private contracts between Lathfield and its licensees.

152.     Such violations of the Michigan Constitution also amounts to an as-applied substantive due process violation.

## COUNT VIII – DECLARATORY RELIEF
### As to Lathrup Village
### Declare the Property a Pre-Existing, Non-Conforming Use

153.     Plaintiff incorporates by reference the allegations set forth above and relies on them as though fully restated here.

154.     An actual controversy exists between the parties about the Property's zoning compliance.

155.    As more fully set forth above, the Property has been used in the same fashion for more than fifteen years.

156.    At all relevant times the City has affirmatively permitted the current and unchanged use of the Property, by issuing business licenses to the same types of businesses and uses that currently exist at the Property.

157.    The City has been aware of the uses taking place at the Property for more than fifteen years.

158.    The City has never acted with reasonable diligence in taking any enforcement action against the Property.

159.    The City has permitted the current use of the Property, either expressly or implicitly, for as long as the Property has been in operation.

160.    More specifically, the City has previously been sued by at least one prior owner over the very issues raised in this Complaint. The City took steps to conceal that lawsuit's results and whatever settlement led to its dismissal.

161.    Upon information and belief, the prior lawsuit against the City was dismissed due to the City's lack of ability to lawfully defend its behavior with respect to the Property as it had permitted the very uses at the Property it now complains of for years prior.

162.    The Property's boundaries, parking, and trash receptacles were all approved and in existence prior to the enactment of any zoning code in the City.

163.    The City's current zoning code contemplates the continuation of any pre-existing, non-conforming use and even codifies that the transfer of ownership cannot change this status.

164.    Lathfield, in good faith, relied upon the City's many years of treating the Property as zoning and site-plan compliant with its current and unchanged uses in acquiring ownership of same.

165.    Had Lathfield been aware of the City's mistreatment of the Property and intention to subsequently reverse course regarding its claimed permitted use at the Property, Lathfield would not have expended significant sums to purchase the Property.

166.    The City has created an exception circumstance with respect to the Property due to the lack of any enforcement with the Property over the course of decades.

167.    The City is estopped from enforcing its zoning and site plan requirement on Lathfield and the Property due to their years of inactions that have been relied upon by every past owner and Lathfield in their ownership of the Property.

168.     The City is likewise barred by the equitable doctrine of laches from refuting the current status of the Property.

169.     The City has either intentionally or negligently permitted the continuation of the Property's current status since its construction.

170.     The City's delay permitted the prior owner to sell the Property to Lathfield.

171.     The prior owner of the Property was Dhal Real Estate, LLC.

172.     The manager and/or owner of Dhal Real Estate, LLC is Jet Dhaliwal.

173.     Jet Dhaliwal sat on the Downtown Development Authority for the City for a number of years.

174.     Prior to the sale of the Property to Lathfield, Dhal Real Estate, LLC was threatened with condemnation by the City.

175.     Prior to the sale of the Property to Lathfield, Dhal Real Estate, LLC sued the City for such condemnation action as set forth above.

176.     The City's permissive approach of the current status of the Property for decades renders it inequitable to permit the City to enforce zoning requirements on Lathfield that it has refused to enforce on other owners.

177.     Lathfield would be prejudiced by the City's treatment of the property as anything other than a pre-existing, non-conforming use.

178.    Lathfield is entitled to a determination that the Property is a pre-

existing, non-conforming use and that no changes or modifications to the

Property, parking, or trash receptacle are required.

## COUNT IX – INVERSE CONDEMNATION UNDER MICHIGAN'S CONSTITUTIONAL PROTECTIONS
### As to Lathrup Village and the DDA

179.    Plaintiff incorporates by reference the allegations set forth above and

relies on them as though fully restated here.

180.    Michigan's Constitution of 1963, Article 10 §2 prohibits the

government's taking of private property for a public use without first

providing just compensation.

181.    The Property holds a special value to the City and the DDA because

of its location and proximity to City Hall.

182.    The City and the DDA do not want the Property, in its current form,

to remain for a number of reasons, including but not limited to: the

anticipated expansion of Southfield Road, their distaste for the minority-

owned businesses that exist at the Property, and their failures over decades

to properly regulate the Property.

183.    The City's wrongful conduct even extends to refusing to timely

process and issue appropriate permits to contractors attempting to do repairs

on the Property.

184.    The City and DDA's conduct toward the Property and toward Lathfield identifies a clear intention to devalue the Property to the point of non-existence.

185.    The City's threats to condemn the Property or to require what would amount to millions of dollars of repairs and upgrades to bring the Property to new construction and zoning standards is intended to destroy any value in the Property.

186.    The City's threats to withhold business licenses for improper purposes is intended to destroy any value in the Property.

187.    The City's conduct as set forth herein constitutes an abuse of government power.

188.    The City's conduct as set forth herein has caused a substantial decline in the value of the Property.

189.    The decline in the value of the Property is directly related to licensees being unlawfully refused business licenses.

190.    The decline in the value of the Property is directly related to prospective licensees being falsely told that the Property is in some state of condemnation proceeding.

191.    The decline in the value of the Property is directly related to Jim

Wright's repeated, and defamatory statements as an agent of the City that

the Property is in some state of condemnation proceeding.

192.    The City's conduct as set forth herein has the effect of taking

Lathfield's Property without just compensation as required by Michigan's

Constitution.

193.    The City's conduct as set forth herein is unique to Lathfield and the

Property and is an attempt to place a burden on Lathfield that the City does

not place on other property owners (except those specific parcels directly

adjoining the Property).

194.    The City's conduct constitutes an inverse condemnation of the

Property under Michigan's Constitutional protections.

195.    The City's conduct constitutes a regulatory taking of the Property

under Michigan's Constitutional protections.

196.    Lathfield is entitled to just compensation for the City's actions under

Michigan's Constitutional protections.

197.    Lathfield is entitled to 125% of the fair market value of the Property

as a result of the City's inverse condemnation actions under Michigan's

Constitutional protections.

**COUNT X – CIVIL CONSPIRACY**
**As to All Defendants**

198.    Plaintiff incorporates by reference the allegations set forth above and

relies on them as though fully restated here.

199.    Defendants know that the Property has been used as it is currently

situated for decades.

200.    The Property sits in a prominent stretch of Southfield Rd., in the heart

of Lathrup, and partially abuts Lathrup City Hall.

201.    The Property is predominantly occupied by minority-owned

businesses providing needed commercial services to Lathrup Village, whose

residents are predominantly minority.

202.    Upon information and belief Lathrup no longer wants the minority-

owned businesses that have been occupying the Property for decades to be

the "face" of Lathrup's commercial corridor.

203.    Defendants desperately desire to upgrade and improve the image of

the City and no longer want the Property in its current form.

204.    Defendants know that they have no lawful means by which to compel

Lathfield to comply with site-plan reviews or other currently enacted

ordinances that would result in Lathfield bringing the Property up to a

standard not required by law.

205.    Defendants know that they have no lawful means by which to disturb the pre-existing and approved mixed use of the Property that the City has permitted for decades.

206.    Defendants conduct as set forth in this Complaint has been done with the concerted effort of all Defendants to use threats, coercion, disparagement, and harassment to obtain a goal they could not do through legal enforcement.

207.    Defendants' conduct has harmed Lathfield s business, disparaged its ownership, and decreased the value of the Property.

208.    Lathfield has been harmed in an amount in excess of $25,000.00 exclusive of interest, costs, and attorney's fees as a result of Defendants' concerted conduct as set forth herein.

**FOR THESE REASONS**, Plaintiff respectfully requests that this court enter an order granting the declaratory relief requested herein; award Plaintiff an amount in excess of $25,000.00, along with such costs, interests, and attorney's fees as determined at trial.

Dated:  February 9, 2021

Respectfully submitted:

**/S/ Aaron D. Cox, Esq.**
By: Aaron D. Cox (P69346)
**Law Offices of Aaron D. Cox, PLLC**
Attorney for the Plaintiff

## **JURY DEMAND**

Plaintiff demands a trial by jury in the above entitled action.

Dated:  February 9, 2021

Respectfully submitted:

**/S/ Aaron D. Cox, Esq.**
By: Aaron D. Cox (P69346)
Law Offices of Aaron D. Cox, PLLC
Attorney for the Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served upon the clerk of the Court and the parties of record by electronic filing and service on the date and time set forth in the ECF system.

Dated:  February 9, 2021

Respectfully submitted:

**/S/ Aaron D. Cox, Esq.**
By: Aaron D. Cox (P69346)
**Law Offices of Aaron D. Cox, PLLC**
Attorney for the Plaintiff